UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Border State Bank, N.A.,

      Plaintiff,

v.                                                                    Civil No. 06-2611 (JNE/RLE)
                                                                  ORDER

AgCountry Farm Credit Services, FLCA, and
AgCountry Farm Credit Services, PCA,

      Defendants.

---

Heather L. Marx, Esq., Mansfield, Tanick & Cohen, P.A., appeared for Plaintiff Border State Bank, N.A.

Jon R. Brakke, Esq., Vogel Law Firm, appeared for Defendants AgCountry Farm Credit Services, FLCA, and AgCountry Farm Credit Services, PCA.

---

      AgCountry Farm Credit Services, FLCA (AgCountry FLCA), and AgCountry Farm Credit Services, PCA (AgCountry PCA), retained proceeds from the sale of a farm's assets. Claiming that it should have received a portion of the proceeds, Border State Bank, N.A., brought this action against AgCountry FLCA and AgCountry PCA (collectively, Defendants) for violations of Minn. Stat. §§ 336.9-608, -611 (2006), unjust enrichment, conversion, and an accounting. The case is before the Court on Defendants' Motion for Summary Judgment and Border State Bank's Motion for Partial Summary Judgment. For the reasons set forth below, the Court grants Defendants' motion and denies Border State Bank's motion.

**I.    BACKGROUND**

      In the late 1990s and early 2000s, River Ridge Dairy, L.L.P., borrowed approximately $1.8 million from AgCountry PCA and approximately $3.0 million from AgCountry FLCA. River Ridge Dairy granted AgCountry PCA and AgCountry FLCA mortgages on its land and

1

security interests in essentially all of its assets. River Ridge Dairy defaulted on the loans made by AgCountry PCA and AgCountry FLCA.

In early January 2003, River Ridge Dairy, its guarantors, AgCountry PCA, AgCountry FLCA, and Dutch Friendship Farms, LLP, entered into a Forbearance Agreement. The Forbearance Agreement contemplated payment on the loans made by AgCountry PCA to reduce principal, interest, and other charges due to $1.4 million and Dutch Friendship Farms' assumption of the loans made by AgCountry PCA. Later that year, Dutch Friendship Farms bought assets of River Ridge Dairy pursuant to an Asset Purchase Agreement. Dutch Friendship Farms paid the purchase price of $1.4 million by "the assumption of that debt and obligation owing to Ag Country."

In 2005, Border State Bank loaned $300,000 to Dutch Friendship Farms. Border State Bank also obtained a security interest in assets of Dutch Friendship Farms.

Dutch Friendship Farms defaulted on the loans made by Border State Bank and AgCountry PCA, and its assets were sold. At the time of the sale, principal, interest, and advances on the loans made by AgCountry PCA amounted to approximately $1.4 million, and principal and interest on the loans that AgCountry FLCA made to River Ridge Dairy exceeded $2.6 million. AgCountry PCA and AgCountry FLCA obtained approximately $1.7 million from the sale of Dutch Friendship Farms' assets. The proceeds were first applied to the loans made by AgCountry PCA and to the expenses incurred during the sale of Dutch Friendship Farms. The remaining proceeds were applied to the loans made by AgCountry FLCA. Border State Bank contends that it should have received a portion of the sale proceeds.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Defendants' motion**

   *1.     Minn. Stat. § 336.9-608*

Border State Bank alleges that Defendants violated Minn. Stat. § 336.9-608 by failing to pay Border State Bank a portion of the proceeds from Dutch Friendship Farms' sale. Where "a security interest or agricultural lien secures payment or performance of an obligation," section 336.9-608 sets forth the order in which a secured party shall apply cash proceeds of collection or enforcement under Minn. Stat. § 336.9-607: (1) reasonable expenses of collection and enforcement and, under certain circumstances, reasonable attorney fees and legal expenses incurred by the secured party; (2) "the satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made"; and (3) under certain

circumstances, "the satisfaction of obligations secured by any subordinate security interest in or other lien on the collateral subject to the security interest or agricultural lien under which the collection or enforcement is made." Minn. Stat. § 336.9-608(a)(1)(A)-(C).

Defendants assert that they are entitled to summary judgment because Border State Bank's security interest was subordinate to their security interests and the sale proceeds were insufficient to satisfy the obligations secured by their security interests. It is undisputed that Border State Bank's security interest was subordinate to that of AgCountry PCA and that AgCountry PCA properly retained a substantial portion of the proceeds from the sale of Dutch Friendship Farms. Border State Bank raises two principal arguments in opposition to Defendants' motion: (1) that AgCountry FLCA should have not received any of the proceeds; and (2) that Defendants agreed to take no more than $1.3 million of the proceeds.

First, Border State Bank maintains that AgCountry FLCA should have not received any of the proceeds because AgCountry FLCA had no security interest in Dutch Friendship Farms' assets. As noted above, AgCountry FLCA had a security interest in River Ridge Dairy's assets. After River Ridge Dairy's default, Dutch Friendship Farms bought River Ridge Dairy's assets subject to AgCountry FLCA's security interest. The Forbearance Agreement states: "The Personal Property Collateral will be sold subject to the security interests of Lender."[1] An addendum to the Asset Purchase Agreement provides: "All Assets shall be transferred from Seller [River Ridge Dairy] to Buyer [Dutch Friendship Farms] subject to the security interests of . . . AgCountry Farm Credit Services, FLCA . . . in the Assets . . . ." Accordingly, AgCountry FLCA's security interest continued after Dutch Friendship Farms' purchase of River Ridge Dairy's assets. *See id.* § 336.9-315(a)(1) (providing that "a security interest or agricultural lien

---

[1] The Forbearance Agreement defines "Personal Property Collateral" to include property encumbered by AgCountry FLCA's security interest and "Lender" to include AgCountry FLCA.

4

continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien").

Border State Bank also argues that satisfaction of the underlying debt extinguished AgCountry FLCA's security interest. According to Border State Bank, AgCountry FLCA accepted a deed to land owned by River Ridge Dairy to satisfy the loans made by AgCountry FLCA. In support, Border State Bank relies on an affidavit of Michael Muston, an investor in and guarantor of River Ridge Dairy and Dutch Friendship Farms, and a letter from Defendants' senior loan officer to Border State Bank's president.

The Court first considers Muston's affidavit. In it, Muston states: "Pursuant to that agreement [the Forbearance Agreement], AgCountry Farm Credit Services, FLCA agreed to accept the deed to the River Ridge land back in satisfaction of its debt." The Forbearance Agreement, however, unambiguously states that AgCountry FLCA's acceptance of the deed shall not constitute satisfaction of the debt owed AgCountry FLCA by River Ridge Dairy: "Even if Lender [AgCountry FLCA] acquires the Mortgaged Property by recordation of the Deed and/or foreclosure of the Mortgages, this shall not satisfy the Indebtedness other than with respect to the proceeds realized upon sale of the Mortgaged Property, which proceeds shall be applied to the Indebtedness."[2] Border State Bank cannot properly rely on Muston's affidavit to contradict the Forbearance Agreement. *See Klawitter v. Straumann*, 255 N.W.2d 407, 411 (Minn. 1977) ("In short, the excluded testimony would be an attempt by the Straumanns to say that while they agreed in writing to one thing, they meant another. This is precisely the type of

---

[2]  No sale of the property mortgaged by River Ridge Dairy took place.

evidence intended to be excluded by the parol evidence rule, and the district judge acted properly in excluding it from the record.").

As to the letter from Defendants' senior loan officer to Border State Bank's president, it states:

> The long term assets of [River Ridge Dairy] were deeded back to AgCountry and in turn, AgCountry has entered into a lease arrangement with Dutch Friendship Farms on the facilities over a four (4) year period. AgCountry came up substantially short on the long term loans but agreed this was the best method to minimize our best options [sic] to net the most dollars back to AgCountry at the present time.

The letter does not state that AgCountry FLCA accepted the deed as satisfaction of River Ridge Dairy's debt.

In short, the Forbearance Agreement unambiguously provides that AgCountry FLCA's acceptance of the deed did not satisfy the debt owed by River Ridge Dairy. Neither Muston's affidavit nor the senior loan officer's letter provides a proper basis to conclude otherwise. Consequently, the Court rejects Border State Bank's assertion that AgCountry FLCA should not have received any of the proceeds from Dutch Friendship Farms' sale.

Second, Border State Bank argues that Defendants agreed to take no more than $1.3 million from the sale of Dutch Friendship Farms. This argument rests on an agreement allegedly signed by Dutch Friendship Farms' manager, a representative of a cattle company, Dutch Friendship Farms' managing partner, and Ron Beyer as Vice President Credit, AgCountry Farm Credit Services. The agreement[3] states:

> D.F.F. LLP [Dutch Friendship Farms] signs up for C.W.T.-bid.
>
> AgCountry FCS waits until bid is accepted or not.
>
> Until so long AgCountry FCS doesn't take any action or for closure against D.F.F. LLP.

---

[3]   The first words that appear on the agreement are "Draft subject to approval."

>   When bid is accepted, then from all the sales of cattle and machinery and C.W.T.:
>
>   A. Ag Country FCS gets US $ 1,300,000.00 maximum.

Defendants contend that Border State Bank cannot properly rely on the agreement to oppose their motion. In support, Defendants rely on Beyer's deposition testimony. At his deposition, Beyer characterized the agreement as a "purported agreement," testified that the agreement was "falsified," and that it was falsified "[i]n many regards." He explained: "Look at it first of all. Look at the various lines across it appears to be cut and pasted. I don't sign any written agreements unless my attorney drafts them, and this certainly wasn't drafted by my attorney." He also testified that he first became aware of the agreement in 2006, but the agreement bears the date of September 14, 2005. Border State Bank does not respond with any evidence that authenticates the agreement. In the absence of such evidence, the Court declines to consider the agreement. *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered."); *Vess Beverages, Inc. v. Paddington Corp.*, 941 F.2d 651, 655 (8th Cir. 1991) ("Under Fed. R. Evid. 901, one must authenticate a document—i.e., show that it is what it purports to be—before introducing it into evidence.").

In short, the record, viewed in the light most favorable to Border State Bank, reveals that AgCountry PCA and Ag Country FLCA had security interests in the assets of Dutch Friendship Farms, that Border State Bank's security interest was subordinate to those of AgCountry PCA

and Ag Country FLCA,[4] and that obligations secured by AgCountry PCA's and Ag Country FLCA's security interests exceeded the proceeds obtained from the sale of Dutch Friendship Farms. Consequently, neither AgCountry PCA nor AgCountry FLCA violated section 336.9-608 by declining to pay Border State Bank a portion of the proceeds from Dutch Friendship Farms' sale.

  *2. Conversion*

Conversion is an act of willful interference with personal property, done without lawful justification, by which a person entitled thereto is deprived of use and possession. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). For the reasons set forth above, the record, viewed in the light most favorable to Border State Bank, reveals that Defendants did not interfere with personal property to which Border State Bank was entitled. The Court therefore grants Defendants' motion on this claim.

  *3. Unjust enrichment*

"To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996). For the reasons stated above, the record, viewed in the light most favorable to Border State Bank, reveals that Defendants neither received nor obtained something of value for which they should pay Border State Bank. The Court therefore grants Defendants' motion on this claim.

---

[4] Paragraph 19 of the Amended Complaint states: "At the time of [Dutch Friendship Farms'] default, the security interests in the Property held by Defendants were senior in position to Plaintiff's security interest in the same Property."

8

*4.     Minn. Stat. § 336.9-611*

Border State Bank alleges that Defendants violated Minn. Stat. § 336.9-611 by failing to give notice of disposition of Dutch Friendship Farms' assets. "After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Minn. Stat. § 336.9-610(a) (2006). Under certain circumstances, "a secured party that disposes of collateral under section 336.9-610 shall send" to other secured parties "a reasonable authenticated notification of disposition." *Id.* § 336.9-611(b).

Defendants assert that they had no obligation to give notice of the sale of Dutch Friendship Farms' assets because Border State Bank did not have a security interest in the equipment of Dutch Friendship Farms and because Defendants neither took possession of nor sold Dutch Friendship Farms' livestock. In his affidavit, Beyer states: "The liquidation of Dutch Friendship's equipment and livestock was handled by Dutch Friendship. [Defendants] never foreclosed against these assets or took possession of the same for purposes of sale." Border State Bank responds that Defendants were actively involved in the disposition of Dutch Friendship Farms' assets. In support, Border State Bank directs the Court to notes of conversations between representatives of Defendants and Dutch Friendship Farms. The notes indicate that Dutch Friendship Farms and Defendants discussed options contemplated by Dutch Friendship Farms for the sale of its livestock, but the notes do not raise a genuine issue of material fact as to whether Defendants disposed of Dutch Friendship Farms' collateral under section 336.9-610. Thus, the record, viewed in the light most favorable to Border State Bank, reveals that Defendants had no obligation to give notice to Border State Bank under section 336.9-611. The Court therefore grants Defendants' motion on this claim.

*5.     Accounting*

Border State Bank also requests an accounting. Defendants assert that Border State Bank has obtained during this action a full accounting of all of the collateral proceeds received by Defendants from Dutch Friendship Farms' sale. Border State Bank has not directed the Court to any evidence that disputes Defendants' assertion. Nor has Border State Bank explained why discovery proved inadequate to obtain the information sought. Accordingly, the Court declines to order an accounting. *See Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 609, 611 (8th Cir. 1998).

**B.     Border State Bank's motion**

Border State Bank moves for summary judgment on the issue of Defendants' liability for violation of section 336.9-608, conversion, and unjust enrichment. Having granted summary judgment to Defendants, the Court denies Border State Bank's motion.

### III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.  Defendants' Motion for Summary Judgment [Docket No. 18] is GRANTED.

2.  Border State Bank's Motion for Partial Summary Judgment [Docket No. 23] is DENIED.

3.  The Amended Complaint [Docket No. 13] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 10, 2007

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
